UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.

ANDREA GORDON, )
    Plaintiff )
 )
 )
VS. )
 )
 )
MASSACHUSETTS BAY ) **COMPLAINT & JURY DEMAND**
TRANSPORTATION AUTHORITY, )
WILLIAM MITCHELL, SCOTT )
ANDREWS, )
    Defendants )
 )

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Andrea Gordon ["Gordon"] complains under 42 U.S.C. §1983 that the captioned defendants have deprived her of her exercise of rights and privileges as a Citizen of the United States. The defendants denied Gordon equal protection of the laws or equal immunities under the law.

### JURISDICTION

1. The Jurisdiction of this Court is invoked under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq which prohibits covered employer from discriminating and retaliating against any employee or applicant for employment regarding any condition of employment on account of race, color, sex, religion or national origin.

### PARTIES

2. Plaintiff, Andrea Gordon [hereinafter "Gordon"] resides in Randolph, Massachusetts, Norfolk County, and is employed by the Massachusetts Bay Transportation Authority [hereinafter "MBTA"] a division of the Massachusetts Department of Transportation [hereinafter "Mass DOT"] located in Boston, Suffolk County, Massachusetts.

3. Defendant, MBTA, a public authority operating under the laws of the Commonwealth of Massachusetts is a division of the Mass DOT and is Gordon's employer.

1

4. Defendant, William Mitchell [hereinafter "Mitchell"] was at all material times an employee of the MBTA and agent of the same, and General Counsel of the MBTA.

5. Defendant, Scott Andrews, [hereinafter "Andrews"] was at all material times an employee of the MBTA, and agent of the same and Superintendent of the MBTA.

## STATEMENT OF FACTS

6. Gordon is an African American (Black) female and has been employed with the MBTA since 1996.

7. Gordon holds the position of Supervisor of Transportation working on the Blue Line.

8. Gordon received her Bachelor of Arts degree from the University of Massachusetts in 1993.

9. Gordon received her Masters in Management from Emmanuel College in January 2005.

10. On or about April 2007, Gordon applied for the position of Superintendent of Subway Operations. She exceeded the qualifications for this position. At that time, Gordon held the position of Supervisor of the Green Line.

11. On or about June 9, 2007, Gordon became aware that she had not been selected for the promotion. She was bypassed for said promotion by a white male named Scott Andrews. On good faith and information, Scott Andrews was less qualified and less experienced for the above referenced position. Gordon held a Master's Degree in management at the time of defendant's failure to promote her; Andrews had little college, if at all. Gordon had seven years of supervisory experience at this time; Andrews had only three.

12. Gordon believes and therefore avers that Defendant MBTA failed to promote her because of her race (Black), gender (female) and in retaliation for engaging in protected activities regarding a case of race discrimination filed by another employee, Johnny Junior.

13. On May 16, 2007, the MBTA received notification that Gordon would be testifying in federal court in the matter of Johnny Junior and his discrimination claim against the MBTA. Specifically in Plaintiff Junior's pre-trial memorandum it stated that Gordon will testify to "Respondent MBTA's disparate treatment of African Americans, including disparate disciplining".

2

14. On May 23, 2007, Deborah Gies, Chief of the Green Line, Joseph Casey, Division Chief RTL, and Mary Dunderdale, Human Resources Employee Relations Representative, recommended Scott Andrews for the position of Superintendent. On reasonable belief and information, Deborah Gies has several internal complaints filed against her alleging race discrimination as well as complaints filed with the Massachusetts Commission Against Discrimination. Specifically, other employees of color and of different national origins have complained that Gies has subjected them to disparate terms and conditions of employment based on their race and national origin.

15. On May 29, 2007, Mary Dunderdale drafted a memorandum in which she stated that "based on the qualifications and responses to questions, the selection committee agreed to award Andrews the position". There was no reference to education or supervisory experience in this memo.

16. Gordon believes that MBTA's failure to promote her was based on her race, gender and in retaliation for her testimony in the Johnny Junior matter. Gordon believes that she exceeded Andrew's qualifications and experience. Gordon also believes that the test scoring process violates MBTA policy; it is subjective and that violates hiring practices as outlined in the Civil Treatment for Managers manual provided by Defendant MBTA.

17. Gordon believes and therefore avers that racism is systemic within the MBTA; that it is pervasive in the practices of the MBTA, including but not limited to its hiring, promoting and disciplinary practices. Gordon believes and therefore avers that these discriminatory and retaliatory practices are not limited to her, but several other employees of color at the MBTA.

18. On June 25, 2007, Gordon filed an internal complaint of discrimination with the Office of Diversity and Civil Rights [hereinafter "OD"]. Gordon alleges that investigator June Castle failed to interview witnesses that Gordon provided to her in her initial complaint. Gordon stated that OD had failed her twice before. Specifically, OD failed to properly investigate Gordon's claims that defendant MBTA failed to promote Ms. Gordon on a prior occasion for two vacant positions. Ms. Gordon had alleged that defendant's failure to promote her was based on her race and gender as both successful candidates were white males. She also alleged that it was because she engaged in protected activities regarding another employee, Terrence Ward, who had alleged that he had been subjected to race discrimination.

19. On March 4, 2008, during a staff meeting conducted by the aforementioned Scott Andrews, now Superintendent, Gordon was

publicly humiliated and subjected to what she believed to be threats, racism and retaliation. Specifically, Andrews said that he was the "majority" and that he is not the "complaint department". Gordon believed his comments to refer to her filing complaints with OD. Andrews went on to state "Stop cc'ing Debbie [Gies] and other people, it will only come back and haunt you, like a boomerang proceed forward at your own peril". Gordon took those words as a threat to her as she copied several people as a matter of course to protect herself and others. Gordon took these words as a threat of retaliation; to not complain to OD or it would come back to haunt her and that there would be consequences.

20. On March 17, 2008, Gordon filed a complaint with her superior, Superintendent Deborah Gies in which she outlined how she believed Scott Andrews was acting in a racially offensive and retaliatory and threatening manner. She cited several examples of how she believed Andrews subjected non-white employees to different treatment based on their race. Gordon believes that his comments were indeed filled with racial and retaliatory animus. Gordon copied this complaint to OD.

21. On July 1, 2008, OD issued a finding of No Cause to the allegations set forth by Gordon. Indeed, Gordon believes and therefore avers that a thorough investigation did not take place and that the finding was wrong. The percentage of findings of cause within OD is offensively low; of the hundreds of complaints filed, only a small percentage result in a finding of Cause. This is part of the systemic racism of the MBTA.

22. On June 2, 2009, Gordon entered the office of Supervisor of the Green Line, Christine Cassino, who on reasonable belief and information is good friends with the aforementioned Superintendent Gies. On Cassino's desk, in full view of all to see, was a highly offensive item. Specifically it was a small red truck with a gorilla and a Black man in a suit sitting next to each other. Having said item on her desk was in violation of MBTA policy; said policy states the following are examples of conduct that may constitute prohibited discrimination: "Ethnic, racial, religious, age, sexual orientation or gender based slurs, jokes, caricatures, cartoons or graffiti". Gordon was extremely offended and immediately called her union representative to witness said item. She filed an internal complaint with OD.

23. On January 29, 2010, over seven months later, in violation of the terms set forth in the MBTA/OD policy for investigations, OD issued a finding of No Cause. This finding was issued by none other than June Castle, the person that Gordon had filed a complaint against back in 2007.

4

24. On or about November 2010, Gordon became aware that Jeanne Morrison, former Director of OD, informed a co-worker that she had been instructed by William Mitchell not to issue a finding of cause on her [Gordon's] OD complaints. On reasonable belief and information, Gordon has reason to believe that Morrison may have been instructed not to issue findings in other cases as well; those being Johnny Junior and Terrence Ward, other Black employees who had alleged race discrimination and retaliation. Complainant believes and therefore avers that there the actions constituting obstructive behavior may not be limited to just her case, but that indeed the systemic racism alleged within the complaint extends to the very department which is supposed to protect its employees from such behavior.

**COUNT I**
**(Race Discrimination)**

25. Gordon reiterates the allegations contained in paragraphs 1 through 24 of the Complaint.

26. Gordon believes and therefore avers that the failure to promote her for the aforementioned position was not done for any legitimate business reason but because of her race.

27. Gordon believes and therefore avers that she was subjected to a racially hostile work environment, one condoned and promoted by defendants.

WHEREFORE:

A. That the Court enjoin the Defendants from continuing their unlawful practices in violation of Title VII of the 1964 Civil Rights Act as amended; 42 USC §2000e;

B. That damages be assessed against the Defendants for any and all injuries, losses or damages suffered by Plaintiff as a result of their illegal acts, including but not limited to emotional distress damages suffered as a result of the unlawful practices of the Defendants;

C. That the Court order Defendant to pay Plaintiff punitive damages because their conduct was malicious, intentional and in conscious violation of the law;

D. That the Defendants be ordered to pay the Plaintiff all reasonable attorney's fees plus costs of this action.

    E.  That the Court order other such relief as is deemed just and proper.

## COUNT II:
## (Gender Discrimination)

28. Gordon reiterates the allegations set forth in paragraphs 1 through 27 above, and incorporates them herein as if fully set forth.

29. Gordon believes and therefore avers that the failure to promote her for the aforementioned position was not done for any legitimate business reason but because of her gender.

WHEREFORE: the Plaintiff demands as follows:

    A.  That the Court enjoin the defendants from continuing their unlawful practices in violation of Title VII of the 1964 Civil Rights Act as amended; 42 USC § 2000e;

    B.  damages be assessed against the Defendants for any and all injuries, losses or damages suffered by Plaintiff as a result of their illegal acts, including but not limited to emotional distress damages;

    C.  That the Court order Defendant to pay Plaintiff punitive damages because their conduct was malicious, intentional and in conscious violation of the law;

    D.  That the Defendants be ordered to pay the Plaintiff all reasonable attorney's fees plus costs of this action;

    E.  That the Court order other such relief as is deemed just and proper.

## COUNT III
## (Retaliation)

30. Gordon reiterates the allegations set forth in paragraphs 1 through 29 above and incorporates them herein as if fully set forth.

31. Gordon believes and therefore avers that the failure to promote her for the aforementioned position was in retaliation for having undertaken protected activities concerning Johnny Junior and Terrence Ward.

WHEREFORE: the Plaintiff demands as follows:

A. The Court enjoin the Defendants from continuing their unlawful practices in violation of Title VII of the 1964 Civil Rights Act as amended; 42 USC §2000e.

B. That damages be assessed against the Defendants for emotional distress damages suffered as a result of the unlawful practices of the Defendants;

C. That the Court order the defendants to pay Plaintiff punitive damages because their conduct was malicious, intentional and in conscious violation of the law;

D. That the Defendants be ordered to pay the Plaintiff all reasonable attorney's fees in accordance with the law;

E. That the Court grant Plaintiff such other relief as may be just and proper.

## COUNT IV
### (Intentional Infliction of Emotional Distress)

32. Gordon reiterates the allegation contained in paragraphs 1 through 31 of the Complaint.

33. Gordon believes and therefore avers that the MBTA and other named defendants in the course of their misconduct described herein, intentionally, knowingly and without privilege subjected Gordon to extreme and outrageous conduct beyond all bounds of decency in a civilized society.

34. Gordon believes and therefore avers that the MBTA and other named defendants conduct caused Gordon to suffer humiliation, indignity, injury to her feelings with physical and emotional manifestations.

Wherefore: the Plaintiff demands as follows:

A. That damages be assessed against the Defendants for emotional distress suffered by Plaintiff as a result of their illegal acts;

B. That the Court order Defendants to pay Plaintiff punitive damages because their conduct was malicious, intentional and in conscious violation of the law;

7

C.  That the Defendants be ordered to pay the Plaintiff all reasonable attorneys' fees plus costs of this action in accordance with the law.

D.  That the Court order other such relief as is deem just and proper.

**WHEREFORE**: The Plaintiff respectfully requests a jury trial on all issues so triable and that the Court:

A.  Enter a judgment on her behalf and against each of the defendants, severally and jointly;

B.  Award her compensatory money damages in the amount no less than $500,000;

C.  Award her punitive damages in the amount no less than $1,000,000;

D.  Award her all reasonable attorney's fees and costs in bringing this action;

E.  Award her interest; and

F.  Enter such further order as is just and equitable.

Respectfully submitted

ANDREA GORDON
By her attorneys:

Michelle Carnevale, Esq.               James R. Tewhey, Esq.
Law Offices of Michelle Carnevale      Law Office of James R. Tewhey
70 Washington Sr., Suite 405           70 Washington St., Suite 405
Salem, MA  01970                       Salem, MA  01970
(978) 741-5200                         (978) 741-5200
BBO No.630942                          BBO No. 634810

Dated:  January 19, 2011

8